UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-22693-CIV-HUCK/O'SULLIVAN

MIGUEL ANGEL SANCHEZ
OSORIO et al.,

    Plaintiffs,

vs.

DOLE FOOD COMPANY, INC. et. al.,

    Defendants.
_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DOLE FOOD COMPANY, INC.'S MOTION FOR BILL OF COSTS

Because of the special circumstances of this case and of the type of case, the Court should deny Defendant Dole Food Company, Inc.'s Motion for Bill of Costs in its entirety, or, in the alternative, it should be reduced in accordance with the objections set out herein.

## INTRODUCTION AND BACKGROUND

Plaintiffs filed this suit in an attempt to collect on a judgment entered against the Defendants in a Nicaraguan court. The Court held an evidentiary Hearing beginning on September 1, 2009 and running through September 4, 2009. (*See* D.E. 339-342.) On December 14, 2009, Defendant Dole Food Company, Inc., filed its Motion for Bill of Costs in which it claimed an extraordinary total of $60,592.88 in costs supposedly taxable under 28 U.S.C. §§ 1821 & 1920. (D.E. 372). On December 15, 2009, the Court entered an Order (D.E 374) requiring a response by December 29, 2009. As set out below, the costs claimed by Dole are far in excess of what the law allows, and if costs are not denied outright, they should be dramatically reduced.

1

**ARGUMENT**

I.      **The Court Should Exercise Its Discretion Not to Tax Costs In This Case**

Federal Rule of Civil Procedure 54(d) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." "The Supreme Court has interpreted Rule 54(d) to grant federal courts the discretion to refuse to tax costs in favor of the prevailing party." *Feinschreiber v. United States*, Case No. 01-3628-CIV-HUCK, 2002 U.S. Dist. LEXIS 15816, 90 A.F.T.R.2d (RIA) 6118 (S.D. Fla. 2002), citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987). Moreover, "[i]n the exercise of sound discretion, trial courts are accorded great latitude in ascertaining taxable costs." *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1526 (11th Cir. 1985) (citing *United States v. Kolesar*, 313 F.2d 835 (5th Cir. 1963)). However, in exercising its discretion to tax costs, absent explicit statutory authorization, federal courts are limited to those costs specifically enumerated in 28 U.S.C. § 1920. *Crawford Fitting Co*, 482 U.S. at 445.

The Eleventh Circuit has held that "a non-prevailing party's financial status is a factor that a district court may, but need not, consider in its award of costs." *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000) (en banc); *see also, e.g.*, *Stanley v. University of Southern California*, 178 F.3d 1069 (9th Cir. 1999) (district court abused its discretion in failing to consider indigency and chilling effect on future litigation when refusing to re-tax costs of $46,710.97 awarded to university); *Ass'n of Mexican-American Educators v. State of California*, 231 F.3d 572 (9th Cir. 2000) (stating that Fed. R. Civ. P. establishes that costs are to be awarded as a matter of course in the "ordinary case" and finding that costs can be denied when case is not ordinary and it would be "inappropriate or inequitable to award costs"); *Antoine v. County of Sacramento*, No. CIV S-06-

01349 (E.D. Cal. 2009) (choosing not to award costs where "the unique circumstances of this case make an award of costs against plaintiff inequitable and could chill meritorious civil rights actions"); *Garcia v. Schull*, No. 2:05-CV-50 (D. N.D. April 10, 2007) (refusing to tax costs and finding that "[t]axing costs in this case would be inequitable to Garcia because it would act as a penalty for accessing the courts and protecting his legal rights"); *Action Alliance for Senior Citizens of Greater Philadelphia, Inc.*, 74 F.R.D. 617 (E.D. Pa. 1977) (power to tax costs should be exercised in a manner that does not bar the door to the courthouse to indigent plaintiffs).

The Plaintiffs in this case are Nicaraguan agriculture workers and would clearly qualify as indigent by U.S. standards. However, due to the short time allowed to respond, the difficulty in even contacting the Plaintiffs, and the expense involved, it is not practical for the Plaintiffs to provide affidavits of indigency or something similar, nor would it be reasonable for the Court to require it under the circumstances. It should be enough for the Court to note that The World Fact Book published by the CIA says Nicaragua has the second lowest per capita income in the Western Hemisphere, with a per capita GDP of just $2900 (compared to $47,500 in the United States).[1]

Furthermore, the Plaintiffs did not lose this case through any fault of their own or because Dole was somehow vindicated of any wrongdoing.[2] Plaintiffs proved their case to the satisfaction of the courts of Nicaragua, which Dole had previously argued were the proper forum for litigation of

---

[1] https://www.cia.gov/library/publications/the-world-factbook/geos/nu.html

[2] It cannot be forgotten that Dole applied DBCP, a pesticide which initial tests demonstrated was hazardous and caused sterility in laboratory animals, and contracted for delivery of the product for use in Nicaragua. In fact, even after it was discovered that DBCP caused sterility to plant workers in the United States, Dole continued to export the product to Nicaragua and even signed an indemnity agreement regarding the health effects of the pesticide. *See generally* D.E. 90 and 91.

DBCP actions,[3] but were forced to come to this Court to try to collect the judgment. It is not their fault that a U.S. Court found Nicaraguan law, specifically Special Law 364 that was passed by the Nicaraguan Legislature, not up to snuff. Given principles of comity and respect for foreign laws, saddling desperately poor people in a foreign country with the bill for Dole's costs for attempting to enforce a judgment that they obtained in Nicaragua, where Dole had previously stated it wanted to litigate, would be the antithesis of equity.

And speaking of equity, courts have ruled that in an appropriate case, unclean hands is a relevant factor for the federal district court to consider in determining a costs award. *See In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449, 468 (3d Cir. 2000). Costs may properly be denied where taxable expenditures by the prevailing party are unnecessary or unreasonably large or where the prevailing party should be penalized for unnecessarily prolonging trial or for injecting unmeritorious issues. *See, e.g., Goostree v. Tennessee*, 796 F.2d 854, 864 (6th Cir. 1986). In preparing its bill of costs, Dole's lawyers either did not bother to do the legal research to determine whether the things they were claiming were proper (and with respect to some costs they did not even bother to read the statute), or if they did, they chose to ignore the fact and disingenuously ask the Court to award far more than the law allows. In fact, in many instances Dole did not appear to abide by Local Rule 7.3, which provides that a motion to tax costs must be "justified." It was no doubt due to Dole's obvious and gross over-reaching that the Court ordered the Plaintiffs to file this response, and that over-reaching provides an additional reason to disallow Dole's bill of costs in its entirety.

---

[3] Central American plantation workers injured by DBCP had originally filed their claims in the United States, but were unable to litigate their cases here because the majority of the cases were dismissed in favor of litigation in plaintiffs' home counties. The court's opinion in *Delgado v. Shell Oil Co.*, 890 F. Supp. 1324 (S.D. Tex. 1995) was the culmination of DBCP litigation in the United States.

4

**II.     Even if the Court Elects to Tax Costs, It Should Grossly Reduce the Amount of Costs Sought by Dole and Should Not Award Costs Not Recoverable Under 28 U.S.C. § 1920**

The particular items that may be taxed as costs are set out in 28 U.S.C. § 1920 and are discretionary with the court. *Exhibit Icons, LLC v. XP Companoes, LLC*, Case No. 07-80824, 2009 WL 3877667, at *1 (S.D. Fla. Nov. 18, 2009). Although taxing costs is discretionary, federal courts are bound by the limitations set out under Section 1920 and may only tax costs specifically enumerated in 28 U.S.C. §1920. *Arcadian Fertilizer, L.P. v. MPW Ind. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001); *Exhibit Icons, LLC*, 2009 WL 3877667, at *1. Furthermore, the party seeking costs has the burden to "provide the Court sufficient information to demonstrate that the costs it seeks to recover are authorized by § 1920 and were reasonable or necessarily incurred." *Eggleston v. Bradshaw*, Case No. 02-80555-CIV-LENARD/TORRES, 2007 U.S. Dist. LEXIS 44015 at *9 (S.D. Fla. June 18, 2007). Because Dole seeks to recover costs not recoverable under §1920 or seeks to recover costs that are clearly excessive, to the extent the Court chooses to award costs, it should reduce the costs sought by Dole as set forth below.

**A.     Pro Hac Vice Filing Fees**

Dole requests the recovery of the pro hac vice filing fees for five separate attorneys. Courts in this district, however, take the position that such costs are not properly recoverable as fees of the clerk under 28 U.S.C. §1920. As the court explained in *Exhibit Icons, LLC,* 2009 WL 3877667, at *2, "*pro hac vice* fee is an expense of counsel, not the client, and is thus not properly recoverable." *See also Eagle Ins. Co. v. Johnson*, 982 F. Supp. 1456, 1459-60 (M.D. Ala. 1997)*, aff'd* 162 F.3d 98 (11th Cir. 1998) (pro hac vice costs denied as not a "fee of the clerk" under 28 U.S.C. § 1914); *Romero v. United States*, 865 F. Supp. 585, 594 (E.D. Mo. 1994). Moreover, Plaintiffs "ought not to bear a cost resulting from Defendants choosing an out of state attorney to defend themselves when

5

competent in-state attorneys [are] available." *Id*. The $375 for *pro hac vice* admission fees that Dole seeks to recover should not be taxed as costs.

**B.      Fees for Transcripts**

In this category, Dole requests the costs of the transcripts for the four-day evidentiary hearing held September 1-5, 2009 in the amount of $2,429.68. 28 U.S.C. §1920 provides that only costs of transcripts "necessarily obtained for use in the case" are recoverable. The case law provides that where transcripts are "merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable." *Dillon v. Axxsys Int'l, Inc.*, No. 8:98-cv-2237-T-23TGW, 2006 WL 3841809 (M.D. Fla. Dec. 19, 2006). *See also McDowell v. Safeway Stores, Inc.*, 758 F.2d 1293, 1294 (8th Cir. 1985) ("Before awarding such costs, the court should determine that transcripts were not obtained primarily for the convenience of parties but were necessary for use in the case."); *Crandall v. City and County of Denver*, 594 F. Supp. 2d 1245, 1248 (D. Colo. 2009) (whether an item is necessarily obtained for use in the case is a fact-based inquiry committed to the discretion of the court; transcripts obtained solely for the convenience of counsel are not taxable).

According to the documents attached to Exhibit B, Dole paid for 14-day delivery of the evidentiary hearing transcripts that the invoice reflects were delivered by the court reporter, Patricia Sanders, on September 30, 2009. That was nearly a month after the evidentiary hearing and after the date for submission by the parties of Amended Findings of Fact and Conclusions of Law, which were submitted on September 14, 2009. These transcripts were not "necessarily obtained for use in the case" given that Dole did not use them in preparing the Amended Findings, which cited merely to exhibits (*See* Defendant's Post-Hearing Consolidated Amended [Proposed] Findings of Fact and

6

Conclusions of Law, D.E. 347), nor in responding to Plaintiffs' Motion for New Trial (*See* Dole's response, D.E. 368). Nowhere in these post-hearing filings did Dole cite to these transcripts.

Clearly, the transcripts were obtained after the evidentiary hearing was concluded merely for convenience; they were not necessarily obtained for use in the case nor were they vital to Dole's presentation of its case and are, thus, not recoverable costs. Courts under similar circumstances have not awarded costs for trial transcripts. *See, e.g.*, *McDowell*, 758 F.2d at 1294 (declining to award costs of trial transcripts as necessarily obtained to prepare proposed findings and conclusions of law where "findings and conclusions were largely based on trial exhibits"); *Dillon*, 2006 WL 3841809, *5 (not awarding costs of transcripts of motion to dismiss and summary judgment hearing because "none of these transcripts were used at trial or necessary for the plaintiffs to try their case."); *Canon Latin America, Inc. v. Lantech, S.A.*, 05-CIV-20297-STB2007 WL 3232472, at *1 (S.D. Fla. 2007) (not awarding costs for hearing transcript where not shown that it was necessarily obtained for use in the case); *Pickett v. Tyson Fresh Meats, Inc.*, 96-A-1103-N, 2004 WL 3712721 (M.D. Ala., Aug. 3, 2004) (declining to award cost of final trial transcript obtained after close of the trial that was clearly not necessary for presentation of case). Accordingly, the Court should not award $2,429.68 for the costs of the evidentiary hearing transcripts obtained nearly a month after the hearing and not necessary to the case.

### C. Fees for Witnesses

Under this category of costs, Dole seeks to recover $11,828.30 as set forth in Exhibit C. This amount consists of $4,531.00 for witness fees and $7,297.30 for Dole's share of witness transportation costs.

### 1. Witness Fees per 28 U.S.C. § 1821.

Plaintiffs do not dispute that the correct witness fee under 18 U.S.C. § 1821(b) is $40 per day, but Plaintiffs do question why Dole claims the full amount of witness fees rather than its share as with witnesses' transportation costs. Similarly, while Plaintiffs agree that Defendants have correctly calculated the maximum subsistence allowance that the court could award, plaintiffs question whether the Court can award anything without evidentiary support. Plaintiffs also question why the amount claimed for subsistence is not reduced so that Dole only recovers its share.

The statute provides: "A subsistence allowance for a witness shall be paid in an amount *not to exceed* the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5, for official travel in the area of attendance by employees of the Federal Government."[4] 18 U.S.C. § 1821(d)(2) (emphasis added). The plain language of the statute indicates that the per diem amount prescribed by the Administrator of General Services is a cap, not a floor and not a flat rate, yet Dole simply asks the Court to award the maximum allowed by law without providing any supporting evidence. Plaintiffs object to the award of any costs without appropriate documentation.

### 2. Witness Transportation Costs

While expenses of a witness may be recoverable costs, the law requires that a witness traveling by common carrier "shall utilize a common carrier at the most economical rate reasonably available." 18 U.S.C. § 1821(c)(1). Dole's supporting documentation does not show how Dole's

---

[4] The maximum per diem allowance prescribed by the Administrator of General Services for Miami for April 1 through September 30 is $44.25 for the first and last day, and $180 for the days in between. *See* http://www.gsa.gov/Portal/gsa/ep/contentView.do?queryYear=2009&contentType=GSA_BASIC&contentId=17943&queryState=Florida&noc=T

share of witness transportation costs was calculated[5] but it does show numerous charges for first class or business class air travel, as well as inflated charges for limousine service.

"First-class travel does not constitute 'the most economical rate reasonably utilized.'" *Hemmerick v. Chrysler Corp.*, 769 F. Supp. 525, 531 (S.D.N.Y. 1991); *see also Denton v. Daimlerchrysler Corp.*, 645 F.Supp.2d 1215, 1229 (N.D. Ga. 2009) (disallowing travel costs where witness traveled by first class and did not use the utilize common carrier at most economical rate). Business-class is not the most economical either, but Larry Lipshultz's bill is for a business class plane ticket,[6] and Stephen Schwebel's is first-class.[7] The documentation regarding Oriel Soto Cuadra's billing documentation[8] does not include information from which the Court (or Plaintiffs) could determine whether his plane ticket was most economical rate reasonably available. Thus, the Court should not tax any of these costs, which are in direct contravention of the applicable statute, to Plaintiffs. S*ee Denton*, 645 F.Supp.2d at 1229 (N.D. Ga. 2009).

Dole's supporting documentation shows that it costs no more than $30-32 to take a taxi from the airport to the J.W. Marriot.[9] According to the Marriott's website, the estimated cab fare from the airport is $25.[10] However, Dole inappropriately asks this Court to tax to Plaintiffs inflated expenses for other witnesses to make the same trip by limousine. This is in direct violation of the statute, which provides for the reimbursement of "taxicab fares" not limousine fares. 28 U.S.C. § 1821(3).

---

[5] In most cases, it appears that Dole is claiming responsibility for 50% of the expenses, but in the case of Omar Garcia-Bolivar and Oriel Soto Cuadra, it appears to be 100%, and in the case of Stephen Schwebel's air travel, it appears to be 25%.

[6] *See* Dole's Exhibit C at 7.

[7] *See* Dole's Exhibit C at 17.

[8] *See* Dole's Exhibit C at 3.

[9] *See* Dole's Exhibit C at 11-15.

Clearly, Dole did not read the statute or chose to ignore it and nonetheless request full reimbursement for limousine fares in the hope that either the Court or Plaintiffs would fail to notice the invoices.

Dole provides no reasonable justification for shifting to the Plaintiffs the charges of $144.65 each (or Dole's share thereof) for a limo to take Oriel Soto Cuadra[11] and Larry Lipshultz[12] about ten miles from Miami International Airport to the Marriott, and there are similar charges to take Steven Schwebel the slightly shorter trip from the airport to the courthouse.[13] Larry Lipshultz billed another $84 for the trip from the Marriot back to the Miami airport.[14] Omar Garcia-Bolivar billed $320 for "Reimbursement for taxis (airport-hotel/court-hotel/etc.),[15] but there is no supporting documentation from which it might be determined whether these charges were reasonable and necessary, or whether they were inflated like the charges attributable to most of Dole's other witnesses. This does not comply with the statutory requirement that "[a] receipt or other evidence of actual cost shall be furnished." See 28 U.S.C. § 1821(c)(1).

Only the documentation that appears to relate to Gabriel Antonio Alvarez Arguello's ground transportation appears to comply with the requirement that it be at the most economical rate reasonably available, *see* 18 U.S.C. § 1821(c)(1), but Dole provides no explanation why it includes bills for cab fare from the airport to the Marriott and back that appear to be connected with attendance at hearing beginning on September 1, 2009, but also charges from August 27, 2009, and

---

[10] *See* http://www.marriott.com/hotels/maps/travel/miajw-jw-marriott-hotel-miami/

[11] *See* Dole's Exhibit C at 4.

[12] *See* Dole's Exhibit C at 10.

[13] *See* Dole's Exhibit C at 19.

[14] *See* Dole's Exhibit C at 5.

August 29, 2009, that do not appear to be attributable to the witness's appearance at a hearing.[16]

The bottom line is that the only part of Dole's request that is unobjectionable is $31, or Dole's share of witness transportation costs for Gabriel Antonio Alvarez Arguello's cab fare from the airport to the Marriott and back incurred on September 1, 2009 and September 6, 2009, respectively, which total $62, Dole's share amounting to $31.

### D. Fees for Exemplification and the Costs of Making Copies

Under this category of costs, Dole seeks to recover $6,393.16 as set forth in Exhibit D. This amount is comprised of $3,152.75 for Dole's share of the costs of preparation of "ebriefs for summary judgment motion and evidentiary hearing;" $801.50 of in-house copy charges; and $2,438.91 for outside vendor copy charges for preparation of hearing exhibits. Dole cannot recover any of these costs under 28 U.S.C. § 1920(4).

#### 1. EBriefs

With respect to Dole's request to recover the costs of ebriefs, these costs comprised of cd-versions of briefs that included hyperlinking. Dole took it upon itself, without the request of the Court and without agreement with opposing counsel, that it would send the Court cd copies of the summary judgment briefs and evidentiary hearing documents with internal hyperlinks to exhibits cited in the briefs. Plaintiffs did no such thing. Dole chose to spend additional money doing this, making it a cost that it chose to incur of its own volition and not "necessarily obtained for use in the case" as set fort under §1920(4). In making the determination of whether a copy is obtained for use in the case, the court should consider whether the prevailing party could have reasonably believed

---

[15] *See* Dole's Exhibit C at 20.

[16] *See* Dole's Exhibit C at 10-11.

that it was necessary to copy the papers at issue. *U.S. E.E.O.C. v. W & O., Inc.*, 213 F.3d 600, 623 (11th Cir. 2000). Here, the costs of ebriefs were clearly not necessary given that Plaintiffs did not spend thousands of dollars providing hyperlinked cd copies of briefs to the Court, which were not requested by the Court.

Moreover, §1920(4) only allows for exemplification and "copies of paper." The Eleventh Circuit has defined "exemplification" to mean "an official transcript of a public record, authenticated as a true copy for use as evidence." *Arcadian Fertilizer, L.P. v. MPW Ind. Srvs., Inc.*, 249 F.2d 1293,1297 (11th Cir. 2001). In addition, the court in *Arcadia* has stated that "[u]ntil Congress sees fit to amend the language of § 1920 to include innovative technologies currently used in the production of demonstrative exhibits, computer animations and videotape exhibits are not taxable because there is no statutory authority." *Id*. at 1297-98. Similarly, there is no statutory authority for the recovery of ebriefs and hyperlinked cd copies of pleadings, which are neither exemplifications nor copies of paper.

### 2. In-House Charges

With respect to in-house copy charges, which amount to $801.50, Dole cannot recover any of this amount because it has failed to demonstrate that the copies were "necessarily obtained for use in the case." Copies made merely for counsel's convenience are not recoverable. *Bates v. Islamorada, Village of Islands*, No. 04-10114, 2007 WL 2113586, at *18 (S.D. Fla. July 23, 2007). Furthermore, "costs such as general copying, computerized legal research, postage, courthouse parking fees and expert witness fees . . . are clearly nonrecoverable" under § 1920. *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (per curiam). Dole has the "burden to demonstrate in its Motion that the copies for which it sought reimbursement were necessarily obtained for use in

the case." *Id*. This involves delineating with specificity the purpose of the copying charges. *See, e.g. Padurjan v. Aventura Limousine & Transp. Service, Inc.*, No. 08-21028-CIV, 2009 WL 4633526 (S.D. Fla. Dec. 2, 2009) (declining to award copying costs where monthly summaries and invoices did not delineate with any specificity purpose of the copying charges); *Bates*, 2007 WL 2113586, at *18 (denying copying costs where motion failed to attach evidence that costs were necessarily obtained for use in the case); *Canon Latin America, Inc. v. Lantech, S.A.*, 05-CIV-20297-STB 2007 WL 3232472, at *1 (S.D. Fla. 2007) (denying copying costs where prevailing party failed to show that copes were for anything other than convenience and that the copies were provided to opposing counsel); *Dillon v. Axxsys, Int'l, Inc.*, No. 8:98-cv-2237, 2006 WL 3841809 (M.D. Fla. Dec. 19, 2006) (denying costs where the prevailing party failed to describe the purpose of the copies).

Where, as here, a party offers only a list of dates and dollar amounts of the copying costs, the claim for copying costs can be denied in its entirety. *Del. Valley Floral Group, Inc. v. Shaw Rose Nets, L.L.C.*, CASE NO. 07-20199-CIV-JORDAN, 2009 U.S. Dist. LEXIS 117563 at *8-11 (S.D. Fla. Nov. 6, 2009). The moving party has the burden to justify expenses, and when the moving party does not meet this burden, or provides insufficient information regarding copy costs, it is within the court's discretion to decline to award any costs. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1340-41 (M.D. Fla. 2002). In *Scelta*, although recognizing that some of the copying costs sought by the moving parties must be recoverable, the court held that where the moving parties "have not described the photocopying costs sufficiently to permit a determination of which photocopies were necessarily obtained for use in this case, reimbursement for photocopying costs is rejected in its entirety." *Id*.

All that Exhibit D provides with respect to in-house copy charges is the description "in-house

13

duplication charge," which is insufficient to determine the purpose of the copy and whether it was for use in the case. Since Dole failed to provide sufficient evidence along with its motion, it should be prevented from doing so at this juncture when Plaintiffs will be unable to contest any after-the-fact characterization by Dole of the necessity of such copies. *See Bates*, 2007 WL 2113586, at *18 n.12 ("Even if Islamorada has filed an amended motion, that would not change the fact that Islamorada failed to meets its burden to demonstrate its entitlement to those costs when it filed its Motion, and the Court therefore would still deny Islamorada's request with prejudice."). In addition, Dole's invoice does not delineate the number of copies or the rate per copy, which is also necessary for the court to determine whether the rate or the copies are excessive. *See Luken v. Int'l Yacht Council*, No. 02-60772-CIV, 2009 WL 678005, at *7 (S.D. Fla. March 11, 2009) (rate of $.10 to $.14 per copy is reasonable); *JVC America, Inc. v. Guardsmark, LLC*, 2007 WL 2872454 (N.D. Ga. Dept. 26, 2007) (denying copying costs for copies generated by counsel's billing system where there was "no indication as to the charges per page"). Moreover, Dole is not entitled to recover costs for binders, binder tabs or DVD burning, which comprise $107.2 of the in-house copying charges. *See Luken*, 2009 WL 678005, at *7 ("costs for binders and dividers are not compensable under the statute").

For the foregoing reasons, Dole cannot recover any of the in-house copy charges that it requests.

### 3. Outside Vendor Copy Charges

With respect to outside vendors for preparation of hearing exhibits, Dole seeks to recover for two charges. As reflected in the invoices, the first in the amount of $1,868.91 is for blowbacks from CD, custom tabs, 5-inch binder, and 4-inch binder, and the second, in the amount of $570 is for

ediscovery technical time (project setup), ediscovery technical time (apply exhibit stickers).

Dole cannot recover any of these charges under §1920(4). First, as to custom tabs and binders, such costs are not recoverable under the statute. *Id.* Second, with respect to the charge of $1,331 for "blowbacks from CD," this description is insufficient to determine what exactly was copied and whether it was necessary for use in the case or merely for the convenience of counsel as set forth above. Finally, with respect to Dole's request to recover $570 for ediscovery technical time, such a cost is not recoverable as "exemplification and copies of papers" given that the costs are merely for technical time expended by the vendor in setting up the project and applying stickers and are not for copies. *See Luken*, 2009 WL 678005, at *7 (denying costs for preparation of exhibits and trial presentation specialist). Thus, with respect to outside vendor "copies," Dole cannot recover any of the costs it seeks.

### E. Compensation of Interpreters

Taxable costs under 28 U.S.C § 1920(6) include, "[c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." Dole's Exhibit E includes $4,359.49 for Dole's share of "Spanish/English translation for witnesses at evidentiary hearing" and $39,738.25 for translation of documents. Plaintiffs do not dispute that reasonable and necessary expenses connected with interpreters are recoverable costs. However, the $4,359.49 Dole claimed for interpreters is far in excess of what was reasonable and necessary, and the $39,738.25 for translation of documents is not taxable at all.

#### 1. Interpreters

Dole's supporting documentation shows that the bill for interpreters includes payment for

travel days and hotel and travel expenses. What is missing from Dole's bill of costs is any explanation of why an interpreter had to be flown in from New York for a hearing in Miami. It is simply not plausible that there were no available Spanish interpreters in the Miami area. In addition, the amount charged for actual interpretation--$5475.00 for five days and $547 for three hours of overtime—is many times what is reasonable and necessary. The current fee for certified and professionally qualified contract interpreters in federal courts is $384 per day and $54 per hour for overtime.[17] Consequently, the reasonable and necessary fee for interpreters would be $2092, of which Dole's share would be $1046.

### 2. Translation of Documents

Although the Eleventh Circuit does not appear to have ruled on whether expenses incurred in obtaining translations of documents are included in taxable costs, the Seventh Circuit's position that they are not is in keeping with the Eleventh Circuit's holding that statutory authorization is an essential prerequisite to an award of costs. *See EEOC v. W&O, In*c., 213 F.3d 600, 623 (11th Cir. 2001); *see also Crawford Fitting Co. v. J.T. Gibbons, Inc*., 482 U.S. 437 (1987). Regarding the taxability of expenses incurred in translation documents, the Seventh Circuit explained:

> The specificity of section 1920(6), and the character of section 1920 as a whole, makes us reluctant to interpret "interpreters" loosely to include translators of written documents, in this case the exhibits presented by Case at depositions and in support of its motion for summary judgment, and also the exhibits on its list of proposed trial exhibits. An interpreter as normally understood is a person who translates living speech from one language to another. He is a type of translator…, but the translator of a document is not referred to as an interpreter. Robert Fagles made famous translations into English of the Iliad, the Odyssey, and the Aeneid, but no one would refer to him as an English-language "interpreter" of these works.

*Extra Equipamentos E Exportacao Ltda. v. Case Corp*., 541 F.3d 719, 727 (7th Cir. 2008) (citations

---

[17] The fee schedule for contract interpreters in federal courts can be found at:

omitted). The court went on to state that, in section 1920:

> [t]he items allowable as costs are a hodgepodge. There is no purposive explanation for why some items are in and others out. To include translation fees would simply complicate the process of awarding court costs.

*Id*. at 728.

While there is a split in the circuits[18] and the Eleventh Circuit has not yet taken sides, district judges from the Southern District of Florida have adopted the Seventh Circuit's position. *See Del. Valley Floral Group, Inc. v. Shaw Rose Nets, LLC*, CASE NO. 07-20199-CIV-JORDAN, 2009 U.S. Dist. LEXIS 117524 (S.D. Fla., Dec. 17, 2009) ("the better view is that § 1920(6) 'deals exclusively with live individuals (experts and interpreters), and not services provided by a private company to translate documents.'"); *Tesler v. Costa Crociere S.P.A.*, CASE NO. 08-60323-CIV-ZLOCH, 2009 U.S. Dist. LEXIS 59938 at *7-8 (S.D. Fla., June 29, 2009) (noting the circuit split, but finding that the Seventh Circuit had the better argument and disallowing translation costs).

Finally, even if expenses incurred in translating documents were a taxable cost, Dole's documentation demonstrates that the charges are frequently inflated "rush" or "weekend rush" fees, and also contain extra fees for overnight delivery, without any showing that there was any need for expedited delivery.

---

http://www.uscourts.gov/interpretprog/rates.html.

[18] *See BDT Products, Inc. v. Lexmark Intern., Inc.*, 405 F.3d 415, 419 (6th Cir. 2005) (finding translation services compensable).

## CONCLUSION

For all the foregoing reasons, Plaintiffs request that Defendant Dole Food Company, Inc.'s Motion for Bill of Costs be denied in its entirety, or, in the alternative, that it be reduced in accordance with the objections set out herein. Plaintiffs further request all other relief to which they may justly be entitled.

Respectfully submitted,

**PODHURST ORSECK, P.A.**
Attorneys for Plaintiffs
25 West Flagler Street, Suite 800
Miami, FL 33130
Telephone: (305) 358-2800
Fax: (305) 358-2382

/s/ Steven C. Marks
AARON S. PODHURST
Fla. Bar No. 063606
STEVEN C. MARKS
Fla. Bar No. 516414
CAROLINA MAHARBIZ
Fla. Bar No. 0675962

JOE J. FISHER, II
MARK SPARKS
PROVOST & UMPHREY LAW FIRM, L.L.P.
P.O. Box 4905
Beaumont, Texas 77704-4905
Telephone: (409) 835-6000
Fax: (405) 813-8641

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on December 29, 2009 we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  We also certify that the foregoing document is being served this day via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel of record.

By:   /s/ Steven C. Marks
STEVEN C. MARKS