UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 07-22693-CIV-HUCK

MIGUEL ANGEL SANCHEZ OSORIO,
et al.,

    Plaintiffs,
vs.

DOLE FOOD COMPANY, et al.,

    Defendants.
_____/

## ORDER ON MOTION FOR RECONSIDERATION

This matter is before the Court on Plaintiffs' motion for post-judgment relief (Doc. 365), filed November 20, 2009. Plaintiffs' motion requests relief in the alternative for a new trial, reconsideration, and/or rehearing under Federal Rules of Civil Procedure 59 and 60. The Court has reviewed the parties' memoranda, the pertinent portions of the record, and is fully advised in the premises.

## BACKGROUND

This case was brought by 150 Nicaraguan citizens to enforce a $97 million judgment rendered in Nicaragua against Dole Food Company, The Dow Chemical Company, and other defendants. The judgment awarded damages (approximately $650,000 per plaintiff) because the defendants' manufacture and use of the pesticide dibromochloropropane (DBCP) purportedly caused Plaintiffs to become sterile after they were exposed to DBCP while working on banana farms in Nicaragua. A detailed factual and procedural background is recounted in two previous orders. *Osorio v. Dole Food Co.*, No. 07-22693-CIV, --- F. Supp. 2d ----, 2009 WL 3398931, 2009 U.S. Dist. LEXIS 99981 (S.D. Fla. Oct. 20, 2009) (order denying recognition of judgment); *Osorio v. Dole Food Co.*, No. 07-22693-CIV, 2009 WL 48189, 2009 U.S. Dist. LEXIS 713 (S.D. Fla. Jan. 5, 2009) (order granting in part and denying in part motion for summary judgment on traditional personal jurisdiction grounds).

Briefly, in 2002 Plaintiffs sued Defendants in Nicaragua under "Special Law 364," a law the Nicaraguan legislature enacted in 2000 specifically to handle DBCP claims. In 2005, the Nicaraguan trial court entered the judgment at issue in this case. Plaintiffs brought this

lawsuit in 2007 to enforce the Nicaraguan judgment under the Florida Uniform Out-of-country Foreign Money-Judgments Recognition Act (Florida Recognition Act). FLA. STAT. §§ 55.601-55.607 (2009). Defendants raised a number of objections to recognizing the judgment, and the Court held an evidentiary hearing for four days in September 2009, during which the parties presented expert testimony and documentary evidence on Special Law 364, the trial proceedings in Nicaragua, and the Nicaraguan judiciary in general. After considering the evidence, including assessing the credibility of live testimony, the Court found that: (1) the Nicaraguan trial court did not have jurisdiction over the defendants; (2) the procedures employed by the Nicaraguan trial court, particularly its application of Special Law 364, a uniquely discriminatory and unfair act designed to target a small group of American companies, did not conform with the requirements of international due process of law;[1] (3) Nicaragua lacks a system of impartial judicial tribunals; and (4) enforcing the judgment would violate the public policy of the State of Florida. *Osorio*, 2009 WL 3398931, at *41, 2009 U.S. Dist. LEXIS 99981, at *127-28. Under the Florida Recognition Act, each of these grounds constitutes an independent basis to deny recognition and enforcement. *See* FLA. STAT. § 55.605 (enumerating grounds for non-recognition). Accordingly, the Court entered final judgment in favor of Defendants. This motion for reconsideration was filed ten days later.

## STANDARD FOR RECONSIDERATION

Although this case was tried under Florida law pursuant to the Court's diversity jurisdiction, federal law governs motions for post-judgment relief. *Woolard v. JLG Indus.*, 210 F.3d 1158, 1168 (10th Cir. 2000). The decision to grant post-judgment relief is within the discretion of the district court. *Willard v. Fairfield S. Co., Inc.*, 472 F.3d 817, 821 (11th Cir. 2006); *Lambert v. Fulton County, Ga.*, 253 F.3d 588, 595, 598 (11th Cir. 2001). Under Rule 59(a) a district court may grant a new trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." The three traditional grounds for granting a motion for reconsideration are: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla.

---

[1] In refusing to recognize the judgment, the Court applied the "international concept of due process" outlined by the Seventh Circuit in *Society of Lloyd's v. Ashenden*, 233 F.3d 473, 476-77 (7th Cir. 2000). *Osorio*, 2009 WL 3398931, at *16, 2009 U.S. Dist. LEXIS 99981, at *51.

2002). Rule 59(a) does not permit parties "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005).

## ANALYSIS

Plaintiffs make three arguments in support of their motion for reconsideration. First, they argue that recognition is required by the Treaty of Friendship, Commerce, and Navigation, entered into force between the United States and Nicaragua in 1958. 9 U.S.T. 449 (1958). Second, they argue that the Nicaraguan trial court's determination that it had jurisdiction over the defendants is binding on this Court on *res judicata* principles. Finally, Plaintiffs argue that the doctrine of comity, explicated by the Supreme Court in *Hilton v. Guyot*, 159 U.S. 113 (1895), mandates recognition of their Nicaraguan judgment. Plaintiffs offer no explanation why these arguments were not raised at an earlier point in this litigation. Moreover, Plaintiffs' newly minted legal theories do not overcome the Court's considered judgment that the Nicaraguan trial court lacked jurisdiction over the defendants, Special Law 364's discriminatory and fundamentally unfair provisions are inconsistent with international due process, and Nicaragua's judiciary does not act impartially as a matter of course.

Plaintiffs pled, briefed, and tried this case under the Florida Recognition Act. That Act was the sole basis for recognition alleged in their complaint, in which Plaintiffs pled all the requirements for recognition under the Florida Recognition Act. Plaintiffs moved for summary judgment under the Florida Recognition Act, and argued in proposed pre- and post-hearing findings of fact and conclusions of law that the Florida Recognition Act required the Court the recognize their judgment. But now, Plaintiffs contend that, unbeknownst to the participants in this lawsuit, including, apparently, Plaintiffs themselves, late arriving, independent legal grounds have emerged that compel recognition of Plaintiffs' judgment. This alone is reason to deny Plaintiffs' motion. "The past is not a package one can lay away." EMILY DICKINSON, SELECTED LETTERS 290 (Thomas H. Johnson, ed., Belknap Press of Harvard University Press 1986) (1914). Rules 59 and 60 do not provide litigants with an opportunity to test new legal theories in the absence of an intervening change in controlling law.

Nevertheless, even if the Court were to consider Plaintiffs' new arguments they would be rejected. The Friendship Treaty on which Plaintiffs rely has not been in force for over 20

years.  On May 1, 1985, the United States embassy in Managua, citing "the policies and actions of the Government of Nicaragua against the peace and security of the Central American region and in violation of the charters of the United Nations and of the Organization of American States," informed the Nicaraguan Ministry of External Relations that the United States would withdraw from the treaty effective May 1, 1986.  U.S. Diplomatic Note concerning Termination of FCN Treaty, No. 127, 24 I.L.M. 811, 815-16 (1985).  This act was pursuant to Article XXV, Paragraph 3 of the Friendship Treaty, which expressly empowered either party to terminate the treaty by giving one year's notice to the other.  Plaintiffs claim the treaty is still in force, citing a decision by the International Court of Justice, which in June 1986 found the United States to be in violation of the Friendship Treaty, and to Justice Powell's concurring opinion in *Goldwater v. Carter*, 444 U.S. 996, 997-1002 (1979), which rejected the proposition that the President of the United States can terminate a treaty without congressional action.[2]

The general rule, however, is "that the courts will accord great, but not binding, weight to a determination by the Executive Department that a treaty is terminated, at least when private rights are involved."  *Sayne v. Shipley*, 418 F.2d 679, 684 (5th Cir.1969).  Therefore, "on the question whether this treaty has ever been terminated, governmental action in respect to it must be regarded as of controlling importance."  *Terlinden v. Ames*, 184 U.S. 270, 285 (1902).  *See also Baker v. Carr*, 369 U.S. 186, 212 (1962); *Blake v. American Airlines, Inc.*, 245 F.3d 1213, 1215-16 (11th Cir. 2001); *N.Y. Chinese TV Programs v. U.E. Enters. Inc.*, 954 F.2d 847, 852 (2d Cir. 1992); *Hoxha v. Levi*, 371 F. Supp. 2d 651, 659 (E.D. Pa. 2005).

The Court very much doubts that the Friendship Treaty, were it in force, would require recognition of the judgment in this case.  Regardless, the Court considers the matter settled by the State Department's determination that the Friendship Treaty has not been in force for over 23 years.  *Compare* U.S. Dep't of State, Treaties in Force 129 (1985) (listing Friendship Treaty of 1956) *and* U.S. Dep't of State, Treaties in Force 131 (1986) (listing Friendship Treaty of 1956 and noting that "[n]otification of termination [was] given by United Sates May 1, 1985, to be effective May 1, 1986) *with* U.S. Dep't of State, Treaties in Force 135-36 (1987) (omitting Friendship Treaty in list of treaties in force with Nicaragua) *and* U.S. Dep't

---

[2]  Plaintiffs are remiss, however, in mischaracterizing Justice Powell's opinion, which no other Justice joined, as the opinion of the Supreme Court.  (*See* Pls.' Reply Br. 5-6.)

of State, Treaties in Force 196-97 (2009) (same); *see also Hoxha v. Levi,* 465 F.3d 554, 562 (3d Cir. 2006) (the Treaties in Force list compiled annually by the States Department "includes treaties that have not expired and have not been otherwise terminated"); *Kastnerova v. United States*, 365 F.3d 980, 985-87 (11th Cir. 2004) (finding that a treaty between the United States and the Czech Republic was still in force because the conduct of the Executives of both countries indicated that they recognized the treaty's continued validity and the treaty was listed in the State Department's Treaties in Force publication); *N.Y. Chinese TV Programs*, 954 F.2d at 851 ("The State Department annually publishes Treaties in Force, listing all treaties that are honored by the United States."). The Court also finds it unnecessary to explain the obvious mischief that would ensue were foreign entities empowered to determine which treaties bind the United States. *Cf. Medellin v. Texas*, 552 U.S. 491, 505 (2008) ("A treaty is, of course, primarily a compact between independent nations" and "depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it. If these interests fail, its infraction becomes the subject of international negotiations and reclamations. It is obvious that with all this the judicial courts have nothing to do and can give no redress." (citations, quotations, and alternations omitted)); *id.* at 506 n.3 ("Even when treaties are self-executing in the sense that they create federal law, the background presumption is that '[i]nternational agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts.'" (alteration in original) (quoting 2 RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 907, cmt. a (1986))).

Plaintiffs next argue that "Florida state-court authority directly on point" precluded the Court, under the doctrine of *res judicata*, from finding that the Nicaraguan trial court lacked jurisdiction over the defendants because the Nicaraguan trial court found that it did have jurisdiction. *See Osorio*, 2009 WL 3398931, at *13-16, 2009 U.S. Dist. LEXIS 99981, at *42-50 (explaining that under Special Law 364 Defendants had a choice to litigate in Nicaragua or in the United States and, by choosing the United States, divested the Nicaraguan courts of jurisdiction). Plaintiffs cite *Atwell v. Atwell*, 730 So. 2d 858 (Fla. 1st DCA 1999), which required that Florida give full faith and credit to a California court's judgment of annulment. *Atwell* is not on point. The Full Faith and Credit Clause applies to the "Acts, Records, and judicial Proceedings of *every other State*." U.S. CONST. art. IV, § 1 (emphasis added). It does

5

not apply to judicial proceedings in foreign states. *E.g.*, *Guinness PLC v. Ward*, 955 F.2d 875, 883 (4th Cir. 1992). Actions to recognize foreign money judgments are governed by the Florida Recognition Act. *See* FLA. STAT. §§ 55.601-55.603. Moreover, even if the Nicaraguan trial court's jurisdictional determinations were binding on this Court—and, to emphasize, they are not—the Florida Recognition Act would still bar recognition because the other independent grounds for non-recognition would still stand.

The Eleventh Circuit cases Plaintiffs cite are similarly off point. None of them involve the recognition of foreign money judgments or the Florida Recognition Act, and none even remotely stand for the propositions Plaintiffs put forth. Most of these cases deal with the federal abstention doctrine; none say anything about recognizing foreign money judgments. *See Belize Telecom, Ltd. v Gov't of Belize*, 528 F.3d 1298 (11th Cir. 2008) (abstaining from deciding questions of Belizean law in a conflict between two Belizean parties); *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249 (11th Cir. 2006) (abstention doctrine); *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227 (11th Cir. 2004) (abstention doctrine); *Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512 (11th Cir. 1994) (abstention doctrine); *McDougald v. Jenson*, 786 F.2d 1465 (11th Cir. 1986) (conflicting child custody orders from two United States jurisdictions).

Finally, Plaintiffs' contention that the doctrine of comity mandates recognition of their judgment misconstrues the Supreme Court's opinion in *Hilton* and ignores that under the *Erie* doctrine state law (i.e., the Florida Recognition Act) controls this issue. In *Hilton*, the Supreme Court declined to give a French judgment conclusive effect because it found that France would not give the same effect to a judgment from the United States. 159 U.S. at 210. *Hilton*'s dictum is helpful, however, in understanding why foreign judgments are treated differently than judgments of sister states and why no nation is likely to recognize a judgment like Plaintiffs obtained in this case. *See id.* at 164 (recognizing that "no nation will suffer the laws of another to interfere with her own to the injury of her citizens" (quoting Story's Conflict of Laws, § 28)). After conducting an exhaustive review of Anglo-American cases and learned authorities on the recognition of foreign judgments, *Hilton* explained that at common law a foreign judgment constituted no more than prima facie evidence of a debt and could therefore be impeached. It was precisely because the common law did not require

recognition of foreign judgments that the Framers included a mandate for full faith and credit in the Constitution as between sister states:

> [B]y the common law, before the American Revolution, all the courts of the several Colonies and States were deemed foreign to each other, and consequently judgments rendered by any one of them were considered as foreign judgments, and their merits reexaminable in another Colony, not only as to the jurisdiction of the court which pronounced them, but also as to the merits of the controversy, to the extent to which they were understood to be reexaminable in England. . . .
>
> It was because of that condition of the law, as between the American Colonies and States, that the United States, at the very beginning of their existence as a nation, ordained that full faith and credit should be given to the judgments of one of the States of the Union in the courts of another of those States.

*Id.* at 180-81. *Hilton* does not support Plaintiffs since the common law doctrine of comity it espouses profoundly undermines their argument that a Nicaraguan judgment be treated no differently than if it were obtained in another American state.

It was obvious to the Supreme Court in *Hilton*, as it was to the drafters of the Uniform Foreign Money-Judgments Recognition Act, that while the commercial benefits accruing from the recognition of foreign judgments weigh in favor of establishing presumptions in favor of recognition, a judicial safety valve is needed for cases such as this one, in which a foreign judgment violates international due process, "works a direct violation of the policy of our laws, and does violence to what we deem the rights of our citizens." *Id.* at 193 (quoting *De Brimont v. Penniman*, 7 F. Cas. 309, 311 (C.C.S.D.N.Y. 1873)). Plaintiffs have failed to cite a single authority authorizing—much less mandating—that a United States court recognize a judgment under these circumstances.

## CONCLUSION

Plaintiffs have failed to establish a single ground for reconsideration or other post-judgment relief. There has been no change in controlling law, no new evidence is presented, and no manifest injustice will occur in the absence of reconsideration. As the Court's order denying recognition makes clear, the opposite is true. The real injustice would be in recognizing a judgment rendered by the partial courts of Nicaragua, without jurisdiction, and under procedures woefully incompatible with international due process of law. Enforcing such a judgment "would undermine public confidence in the tribunals of this state, in the rule

7

of law, in the administration of justice, and in the security of individuals' rights to a fair judicial process." *Osorio*, 2009 WL 3398931, at *37, 2009 U.S. Dist. LEXIS 99981, at * 114. It is therefore

ORDERED AND ADJUDGED that Plaintiffs' motion for a new trial, reconsideration, and/or rehearing (Doc. 365) is DENIED.

DONE in Chambers at Miami, Florida, on the 12th day of February, 2010.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record